UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MICHAEL MYERS,

                            Plaintiff,              9:20-CV-0465
                                                            (BKS/DJS)
      v.

ERICA SAXTON, et al.,

                            Defendants.

---

APPEARANCES:

MICHAEL MYERS
13462261604
Plaintiff, pro se
Central New York Psychiatric Center
P.O. Box 300
Marcy, NY 13403

BRENDA K. SANNES
United States District Judge

## DECISION AND ORDER

**I.    INTRODUCTION**

       On or about April 23, 2020, pro se plaintiff Michael Myers ("plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") by filing a complaint. Dkt. No. 1 ("Compl."). Plaintiff is a resident in civil confinement in the Central New York Psychiatric Center ("CNYPC"). Compl. at 2. At the time plaintiff filed his complaint, he also submitted an application to proceed in the action in forma pauperis ("IFP"). Dkt. No. 2. On June 1, 2020, the Court issued a Decision and Order granting plaintiff's IFP application and accepting the complaint for filing pursuant to 28 U.S.C. § 1915 ("Section 1915") to the extent

it asserted three causes of action against defendants Ryan Collins and Erica Saxton. Dkt. No. 3 ("June Order"). On June 4, 2020, defendant Saxton was served with process, and on June 25, 2020, the New York State Attorney General filed a notice of appearance on behalf of defendant Saxton. Dkt. Nos. 6, 7. Although defendant Collins has not yet been served with process, the New York State Attorney General also filed a notice of appearance on his behalf on July 2, 2020. Dkt. No. 8.

On July 8, 2020, plaintiff filed an amended complaint. Dkt. No. 10 ("Am. Compl."). In lieu of an answer – and without acknowledging plaintiff's amended complaint – defendant Saxton filed a motion to dismiss plaintiff's original complaint on July 23, 2020. Dkt. No. 13. Plaintiff has since responded in opposition to the motion to dismiss. Dkt. No. 17 ("Response").

In addition to plaintiff's amended complaint and defendant Saxton's motion to dismiss, also pending before the Court at this time are plaintiff's motions to (1) be included in any Court conference that may be conducted in this action, and (2) modify the classification of this action by the Court so that it does not make reference to plaintiff as a prisoner. Dkt. Nos. 12, 16.

For the reasons set forth below, plaintiff's amended complaint is accepted for filing with respect to some of the causes of action asserted therein; defendant Saxton's motion to dismiss is denied as moot with leave to renew; and plaintiff's motions to be included in any Court conferences and modification of the classification of this action are granted in part.

## II. DISCUSSION

### A. Plaintiff's Amended Complaint

#### 1. Governing Legal Standard

The legal standard governing the review of a pro se inmate-plaintiff's complaint pursuant to Sections 1915 was discussed at length in the June Order and will not be restated in this Decision and Order. June Order at 2-3.

#### 2. Summary of the Second Amended Complaint

Although plaintiff's amended complaint alleges the same general facts as the original complaint, it offers additional details concerning the relevant events and identifies the John Doe defendant named in the original complaint. At all times relevant to this action, plaintiff was a civilly confined resident in the CNYPC. Am. Compl. at 2. The following facts are as alleged in the amended complaint.

On March 23, 2020, defendant Michael Wilkinson, a CNYPC staff member, entered plaintiff's room in Unit 604 to conduct room inventory. Am. Compl. at 2. Defendant Wilkinson began "to make harsh comments about [plaintiff's] room" and then "flip[ped] through plaintiff's] legal materials" before leaving the room and locking it. *Id.* Defendant Wilkinson returned to plaintiff's room with eight other staff members, "including Risk Management," and told plaintiff that he was no longer inventorying plaintiff's room but instead conducting a room search. *Id.* at 3. Plaintiff then left his room "because [he] felt threaten[ed] under mental distress emergency and pulled the red phone for help." *Id.* Plaintiff then went to the dayroom "and peacefully protested the treatment [he] was

3

receiving." *Id.*

Defendant Wilkinson, defendant Ryan Collins, another CNYPC staff member, and at least five other CNYPC staff members entered the dayroom and directed plaintiff "to go to the side room the easy way or by force." Am. Compl. at 3. Although a supervisor or treatment team leader is supposed to be present during a red phone emergency (sometimes called a "red dot"), neither a supervisor nor plaintiff's treatment team leader, defendant Erica Saxton, responded on this date. *Id.* Defendant Collins specifically directed plaintiff to walk to the side room, threatening him with use of force if he did not comply. *Id.* Because plaintiff was "not out of control," he refused defendant Collins' directive. *Id.* Defendants Collins directed defendant Wilkinson and another unidentified staff member to "grab [plaintiff] and walk [him] by force." *Id*.

During the escort to the side room, defendant Wilkinson and the other staff member intentionally "bounce[d plaintiff] off the doors of the elevator." Am. Compl. at 4. When plaintiff arrived in the side room in Unit 404, defendant Collins directed plaintiff to give him plaintiff's watch but plaintiff refused. *Id.* Defendants Collins and Wilkinson, along with other staff members, then assaulted plaintiff. *Id.* Plaintiff's arms and legs were restrained by straps that cut his skin, making him bleed. *Id.* In addition, plaintiff was placed in a chest strap that restricted his breathing. *Id.* at 5.

While plaintiff was in the side room restrained, a nurse arrived and gave plaintiff two shots, both of which cause plaintiff "great" and "severe" pain. Am. Compl. at 5. In addition, a doctor attempted to treat plaintiff "several times" but was directed to leave by defendant Collins. *Id.*

4

Plaintiff was released from the restraint bed approximately an hour after he arrived into the side room. *Id*. He then fell on his head, causing him to faint. *Id.* Plaintiff awoke the next day and saw defendant Saxton and was provided medical treatment by a doctor. *Id.* Plaintiff was released from the side room and back into Unit 604 after lunch that day. *Id.*

Upon returning to his room in Unit 604, plaintiff discovered his room a mess, including "legal documents from [his] pending civil Article 10 case and pending appeal . . . ripped up and destroyed." Am. Compl. at 6. One of plaintiff's fellow residents had witnessed defendants Collins and Wilkinson conduct the search of plaintiff's room the day before. *Id.* All of plaintiff's magazines were also confiscated during the search and given to defendant Saxton to review. *Id.*

On March 24, 2020, defendant Saxton "g[a]ve [plaintiff] random room searches" for the purpose of harassing plaintiff. Am. Compl. at 6. According to plaintiff, CNYPC residents are subject to searches only upon a finding of probable cause, "not merely a cup in a room."[1] *Id*. According to plaintiff, the random room searches violates Article 33 of New York State Mental Hygiene Law. *Id.*

On March 25, 2020, defendant Saxton gave plaintiff 28-days Motivation on Deck ("MOD"),[2] and the next day she placed plaintiff on a magazine restriction. Am. Compl. at 7.

---

[1] The relevance of plaintiff's reference to "a cup in a room" is not clear from the allegations set forth in the amended complaint. For purposes of this Decision and Order, the Court assumes that it relates to defendant Wilkinson's decision to convert the room inventory on March 23, 2020, to a room search.

[2] As explained in the June Order, "[t]he [MOD]. . . Program [at CNYPC] is 'a tool designed to decrease aggressive and impulsive behaviors while increasing motivation to engage in traditional tracks of the CNYPC [Sex Offender Treatment Program ("SOTP")].'" *Aiello v. Lamitie*, No. 16-CV-0053, 2020 WL 918989, at *2 (N.D.N.Y. Feb. 26, 2020) (quoting Jeffrey Nowicki, the Chief of Mental Health Treatment Services for the SOTP at CNYPC). "While on MOD status, a resident is subject to greater restrictions than the general SOTP population, but it is not utilized as a form of punishment." *Aiello*, 2020 WL 918989, at *2.

According to defendant Saxton, plaintiff was being punished for cutting out pictures of kids and taping them back into magazines. *Id.* at 8. Plaintiff was not provided a hearing prior to the issuance of either the 28-day MOD or the magazine restriction, nor was he given an opportunity to appeal those sanctions. *Id.* Defendant Saxton told plaintiff that the magazine restriction would be lifted only when plaintiff admitted to sexually deviant behavior, which plaintiff denies. *Id.* at 8-9.

Liberally construed, plaintiff's amended complaint asserts First, Fourth, and Fourteenth Amendment claims against defendants Saxton, Collins, and Wilkinson. Am. Compl. at 9-11. For a complete statement of plaintiff's claims, reference is made to the amended complaint.

### 3. Analysis

#### a. Use of Force

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court will require a response to plaintiff's Fourteenth Amendment due process claims asserted against defendants Collins and Wilkinson arising from the use of force incident at CNYPC on March 23, 2020. In so ruling, the Court expresses no opinion as to whether those claims can withstand a properly filed dispositive motion.

#### b. Room Searches

Plaintiff's amended complaint alleges that defendants Collins and Wilkinson unlawfully searched plaintiff's room on March 23, 2020, and that, on March 24, 2020, defendant Saxton unlawfully implemented random room searches as a sanction. Am. Compl.

at 3, 6. As explained to plaintiff in the June Order, however, involuntarily committed persons, like plaintiff, have no constitutional right to be free from room searches. *See Lombardo v. Holanchock*, No. 07-CV-8674, 2008 WL 2543573, at *8 (S.D.N.Y. Jun. 25, 2008); *accord, June v. Blair*, No. 09-CV-0323, 2010 WL 8522831, at *16 (N.D.N.Y. Sept. 30, 2010) (report and recommendation adopted in relevant part by 2012 WL 1048463 (N.D.N.Y. Mar. 28, 2012)). Although plaintiff contends that the room searches violated state laws (*e.g.*, New York Mental Hygiene Law Article 33 (*see* Am. Compl. at 6)), the violation of a state law does not, on its own, give rise to a constitutional claim. *See Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir.1985) ("[A] violation of state law is not cognizable under [Section] 1983." (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)); *accord, Old St. George's LLC v. Bianco*, 389 F. App'x 33, 35 (2d Cir. 2010). Only when the violation of state law also infringes a plaintiff's constitutional rights will it give rise to a Section 1983 claim. *See Allred v. Knowles*, No. 06-CV-0456, 2010 WL 3911414, at *5 (W.D.N.Y. Oct. 5, 2010) ("[V]iolations of state law that do not deprive the plaintiff of a right 'secured by the Constitution and laws' are insufficient to support a claim under [Section] 1983.") (quoting *Baker v. McCollan*, 443 U.S. 137, 139-40 (1979)); *see also Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990). Because, as noted above, involuntarily confined individuals, like plaintiff, do not have a constitutional right to be free from random searches, plaintiff's Fourteenth Amendment due process claims asserted against defendants Collins, Wilkinson, and Saxton concerning room searches are dismissed for failure to state a claim upon which relief may be granted pursuant to Section 1915(e)(2)(B)(ii).

### c. Denial of Medical Treatment

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court will require a response to plaintiff's Fourteenth Amendment due process claim asserted against defendant Collins arising out of allegations that he did not allow a doctor to treat plaintiff on March 23, 2020, when plaintiff was restrained on a bed, bleeding, having a difficult time breathing, and in "great" and "sever[e]" pain. Am. Compl. at 5. In so ruling, the Court expresses no opinion as to whether that claim can withstand a properly filed dispositive motion.

The Court reaches a different conclusion, however, to the extent plaintiff's amended complaint asserts a due process claim against defendant Wilkinson concerning the medical treatment plaintiff did not receive. *See* Am. Compl. 10 (alleging that defendant "Wilkinson . . . refuse[d] to provide me medical attention"). As discussed in the June Order, "[p]ersonal involvement of [a] defendant[] in [an] alleged constitutional deprivation[] is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Aside from plaintiff's conclusory allegation that defendant Wilkinson "refuse[d]" him medical attention, Am. Compl. at 10, plaintiff's amended complaint fails to allege that defendant Wilkinson was personally involved in denying plaintiff medical care. The amended complaint only alleges that defendant Collins ordered the doctor out of the side room and that defendant Collins did so despite his duty to facilitate medical care on plaintiff's behalf. *Id.* There are no allegations that defendant Wilkinson was present for or witnessed the doctor attempt to provide plaintiff medical attention, or that defendant Wilkinson was

8

otherwise personally involved in turning the doctor away when he attempted to provide medical care.

While personal involvement is a prerequisite to an award of damages under Section 1983, plaintiff's medical indifference claim against defendant Wilkinson seeking injunctive relief also must be dismissed at this juncture because there are no allegations in the amended complaint that defendant Wilkinson has the relevant authority at CNYPC to carry out the injunctive relief plaintiff seeks. *See Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) ("[A]ctions involving claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action."). More specifically, plaintiff seeks an injunction (1) "creating new rules" and laws under the Mental Hygiene Law; (2) creating a "board . . . to investigate resident complaints and to [e]nforce rules and regulations"; (3) "add [CNYPC residents] to be covered by the Department of Justice"; and (4) declaring magazine restrictions at CNYPC unconstitutional. Am. Compl. at 12. Plaintiff describes defendant Wilkinson's employment position at CNYPC as "staff." *Id.* at 2. Without more detail as to defendant Wilkinson's job responsibilities, the Court declines to conclude at this early juncture that a staff member at CNYPC has the decision-making authority necessary to enforce the injunctive relief plaintiff seeks.

Accordingly, for the foregoing reasons, defendant Collins will be made to respond to plaintiff's amended complaint asserting a Fourteenth Amendment due process claim arising from allegations that he denied plaintiff medical care, but plaintiff's due process claim asserted against defendant Wilkinson concerning medical treatment is dismissed for failure

9

to state a claim upon which relief may be granted pursuant to Section 1915(e)(2)(B)(ii).

### d. Interference With Legal Documents

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court will require a response to plaintiff's First Amendment court access claims asserted against defendants Collins and Wilkinson arising out of allegations they destroyed his legal documents related to an Article 10 annual review proceeding and his trial appeal. Am. Compl. at 6, 10. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### e. MOD Restriction

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court will require a response to plaintiff's Fourteenth Amendment due process claim asserted against defendant Saxton arising from allegations that she placed him on 28 days MOD. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### f. Magazine Restrictions

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff*, 537 F.3d at 191, the Court will require a response to plaintiff's First Amendment claim asserted against defendant Saxton arising from allegations that she placed him on an indefinite period of magazine restriction. In so ruling,

the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### B. Defendant Saxton's Motion to Dismiss

Because plaintiff's amended complaint is accepted for filing with respect to some of the causes of action asserted therein following the Court's sua sponte initial review pursuant to Section 1915, defendant Saxton's motion to dismiss plaintiff's original complaint is now moot. Accordingly, the motion is denied without prejudice to the extent defendant Saxton wishes to renew it as it relates to the newly operative amended complaint.

### C. Plaintiff's Remaining Motions

Plaintiff's two remaining motions both focus on the Clerk of the Court's classification of this action as a "prisoner civil rights" action. *See* Dkt. Nos. 12, 16. Plaintiff is concerned that, because the nature of suit assigned to this action is "prisoner civil rights," he will be mistaken for an inmate by the Court. *Id.* While the Court acknowledges plaintiff's concern, as noted in the June Order (and again at the outset of this Decision and Order), the Court recognizes plaintiff's status as a civilly confined resident in the CNYPC – not a prisoner – and the Court also recognizes that, as a civilly confined person, plaintiff is afforded greater protections under the Constitution than a prisoner. The nature of suit code assigned to this action by the Clerk of the Court (i.e., "prisoner civil rights") is automatically assigned to all actions in which a person in confinement files a lawsuit complaining that the conditions of his confinement violate the Constitution. "Confinement" in this context refers not only to prisoners, but also civilly confined persons like plaintiff. The Court has, and will, take all appropriate measures to afford plaintiff all of the protections due to him under the

11

Constitution as he litigates this action.

Accordingly, the Court grants plaintiff's motions to the extent they ask the Court to adhere to the Constitution and recognize plaintiff as a non-prisoner. The motions are otherwise denied.

## III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's amended complaint (Dkt. No. 10) is **ACCEPTED for filing** to the extent that it asserts (1) Fourteenth Amendment due process claims against defendants Collins and Wilkinson arising from the use of force incident on March 23, 2020 at CNYPC; (2) a Fourteenth Amendment due process claim against defendant Collins arising from allegations that he interfered in plaintiff's medical treatment on March 23, 2020; (3) First Amendment court access claims against defendants Collins and Wilkinson following the search of plaintiff's room on March 23, 2020; (4) a Fourteenth Amendment due process claim against defendant Saxton arising from allegations that she placed plaintiff on 28-day MOD; and (5) a First Amendment claim against defendant Saxton based on allegations that she imposed an indefinite period of magazine restriction on plaintiff; and it is further

**ORDERED** that, except as to the foregoing, the claims asserted in plaintiff's amended complaint are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

**ORDERED** that the Clerk shall issue a summons and forward it, along with a copy of plaintiff's amended complaint, to the United States Marshal Service for service upon defendant Wilkinson; and it is further

**ORDERED** that defendants Saxton, Collins, and Wilkinson shall respond to the amended complaint in accordance with the Federal Rules of Civil Procedure; and it is further

**ORDERED** that defendant Saxton's motion to dismiss (Dkt. No. 13) is **DENIED as moot without prejudice** to renewal; and it is further

**ORDERED** that plaintiff's motions related to his request that the Court recognize him as a non-prisoner (Dkt. Nos. 12, 16) are **GRANTED in part** to the extent that the Court acknowledges that plaintiff is not a prisoner and will afford him the protections due to him under the Constitution but otherwise the motions are **DENIED**; and it is further

**ORDERED** the Clerk serve a copy of this Decision and Order on plaintiff, as well as any unreported cases cited to in this Decision and Order.

**IT IS SO ORDERED.**

Dated: August 26, 2020

*Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge