UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

MICHAEL MYERS,

                    Plaintiff,                9:20-CV-0465
                                                          (BKS/DJS)

   v.

ERICA SAXTON, et al.,

                    Defendants.

---

APPEARANCES:

MICHAEL MYERS
13462261604
Plaintiff, pro se
Central New York Psychiatric Center
P.O. Box 300
Marcy, NY 13403

HON. LETITIA A. JAMES               KONSTANDINOS D. LERIS, ESQ.
New York State Attorney General     Assistant Attorney General
The Capitol
Albany, NY 12224

BRENDA K. SANNES
United States District Judge

**DECISION AND ORDER**

**I.    INTRODUCTION**

This action was commenced by pro se plaintiff Michael Myers ("plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983") on or about April 23, 2020. Dkt. No. 1 ("Compl."); Dkt. No. 2. Plaintiff is a resident civilly committed in the Central New York Psychiatric Center ("CNYPC"). Compl. at 2.

On June 1, 2020, the Court issued a Decision and Order granting plaintiff's application to proceed in the action in forma pauperis ("IFP") and accepting the complaint for filing pursuant to 28 U.S.C. § 1915 ("Section 1915") to the extent it asserted three causes of action against defendants Ryan Collins and Erica Saxton, as well as an unidentified "John Doe."  Dkt. No. 3.

On July 8, 2020, plaintiff filed an amended complaint.  Dkt. No. 10 ("Am. Compl.").  On July 23, 2020, in lieu of an answer, defendant Saxton filed a partial motion to dismiss plaintiff's original complaint.  Dkt. No. 13.  On August 27, 2020, the Court issued a Decision and Order accepting plaintiff's amended complaint for filing with respect to the following claims: (1) Fourteenth Amendment claims asserted against defendants Collins and Michael Wilkinson[1] arising from the use of force incident at CNYPC on March 23, 2020; (2) a Fourteenth Amendment claim asserted against defendant Collins arising from allegations that he interfered with plaintiff's medical treatment on March 23, 2020; (3) First Amendment court access claims asserted against defendants Collins and Wilkinson following the search of plaintiff's room on March 23, 2020; (4) a Fourteenth Amendment due process claim asserted against defendant Saxton arising from allegations that she placed plaintiff on Motivation on Deck ("MOD") status for 28 days; and (5) a First Amendment claim asserted against defendant Saxton based on allegations that she imposed an indefinite period of magazine restriction on plaintiff.  Dkt. No. 21 ("August Order") at 12.  In light of the filing (and the Court's acceptance) of plaintiff's amended complaint, defendant Saxton's partial motion to dismiss the original complaint was denied without prejudice as moot.  August Order at 13.

---

[1] Defendant Wilkinson is the "John Doe" identified in plaintiff's original complaint.

2

Currently pending before the Court are defendant Saxton's re-filed partial motion to dismiss the amended complaint (Dkt. No. 36) and two motions filed by plaintiff to supplement the amended complaint (Dkt. Nos. 29, 41). For the reasons set forth below, defendant Saxton's motion is denied; plaintiff's first motion to supplement is granted in part; and plaintiff's second motion to supplement is denied.

## II.   BACKGROUND[2]

On March 23, 2020, CNYPC staff members searched plaintiff's room. Am. Compl. at 3. Plaintiff was "peacefully protest[ing]" the search in the dayroom when defendants Wilkinson and Collins, two CNYPC staff members, entered and directed plaintiff "to go to the side room the easy way or by force." *Id.* When plaintiff refused to comply, defendant Collins directed defendant Wilkinson and another unidentified staff member to "grab [plaintiff] and walk [him] by force." *Id.* Defendant Wilkson and the other staff member "bounce[d plaintiff] off the doors of the elevator" during the escort. *Id.* at 4. When plaintiff arrived in the side room, defendants Collins and Wilkinson, along with other staff members, assaulted him. *Id.*

During the search of plaintiff's room, CNYPC staff discovered magazines that had pictures of children taped inside of them. Am. Compl. at 8. Although plaintiff denies responsibility for the altered magazines, defendant Saxton, plaintiff's treatment team leader, placed plaintiff on 28-day motivation on deck ("MOD") status and also placed plaintiff on a magazine restriction on or about March 25, 2020. *Id.* at 7. According to defendant Saxton,

---

[2] Except as otherwise noted, the following recitation of the facts relevant to the parties' pending motions is derived from the allegations set forth in plaintiff's amended complaint. All allegations have been accepted as true for purposes of this Decision and Order. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the allegations contained in the complaint.").

3

plaintiff was being punished for cutting out pictures of children and taping them inside his magazines. *Id.* at 8. Plaintiff was not provided a hearing prior to the issuance of MOD status or the magazine restriction, nor was he given an opportunity to appeal them. *Id.* Defendant Saxton told plaintiff that the magazine restriction would be lifted only when he admitted to sexually deviant behavior. *Id.* at 8-9.

In plaintiff's first proposed supplemental complaint, he alleges that defendant Saxton continues to deny him magazine privileges and that, on August 28, 2020, after plaintiff once again denied that he taped the pictures of the children inside his magazines, defendant Saxton revoked his privileges allowing him to call his brother, who is in prison. Dkt. No. 29-1 ("First Suppl. Compl.") at 2-3. Plaintiff also alleges that he was placed on MOD status again on August 5, 2020, and August 26, 2020. *Id.* at 3-4.

In plaintiff's second proposed supplemental complaint, he alleges that defendant Collins has retaliated against him since the commencement of this action "by failing to provide . . . regular supplies and also [by] showing hostil[ity] towards . . . plaintiff." Dkt. No. 41-1 ("Second Suppl. Compl.") at 1.

## III. DISCUSSION

### A. Defendant Saxton's Motion to Dismiss

#### 1. Legal Standard Governing Motions to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell*

4

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Mayor & City Council of Balt.*, 709 F.3d at 135 (quoting *Twombly*, 550 U.S. at 555).  The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When assessing the sufficiency of a complaint against this backdrop, deference should be afforded to a pro se litigant, whose complaint merits a generous construction by the Court when determining whether it states a cognizable cause of action.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (internal quotation marks omitted));  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("[W]hen a plaintiff proceeds *pro se*, a court is obliged to construe his pleadings liberally." (internal quotation marks and alterations omitted)).

### 2. Analysis

#### a. Fourteenth Amendment Due Process Claim

Plaintiff's Fourteenth Amendment due process claim asserted against defendant Saxton arises from allegations that, following the search of plaintiff's room on March 23, 2020, during which CNYPC staff members discovered magazines with pictures of children taped inside, defendant Saxton gave plaintiff a "MOD sheet loss of privileges for 28 days"

5

without a hearing and without an opportunity to appeal.³  Am. Compl. at 7.

Individuals subjected to involuntary confinement, like plaintiff, retain substantive due process rights under the Fourteenth Amendment.  *See Youngberg v. Romeo*, 457 U.S. 307, 315-16 (1982).  In relevant part, the Fourteenth Amendment prohibits "any State [from] depriv[ing]] any person life, liberty, or property, without due process of law[.]"  U.S. CONST. amend. XIV.  Accordingly, to state a cognizable Fourteenth Amendment due process claim, a complaint must plausibly allege that the defendant has violated one of the plaintiff's constitutionally protected interests.  *See Perry v. McDonald*, 280 F.3d 159, 173 (2d Cir. 2001) ("In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." (internal quotation marks and alterations omitted)).

Involuntarily committed residents, like plaintiff, specifically retain rights under the Due Process Clause to adequate food, shelter, clothing, and medical care; training and treatment; safe, decent, and humane conditions of confinement; and freedom from undue bodily restraint.  *Youngberg*, 457 U.S. at 315-16, 320, 324 (stating that individuals involuntarily confined must be provided "adequate food, shelter, clothing, and medical care"; "reasonable safety . . . within the institution"; freedom from "restrain[t] . . . except when and to the extent professional judgment deems this necessary to assure such safety or to provide needed training"; and "training as an appropriate professional would consider reasonable to ensure

---

³ The MOD program at CNYPC has been subject to challenge by other involuntarily civilly confined individuals.  *See, e.g., Brooks v. Hogan*, No. 17-CV-0585, 2020 WL 5034226, at *3 (N.D.N.Y. Apr. 27, 2020), *report and recommendation adopted by* 2020 WL 2832045 (N.D.N.Y. June 1, 2020); *Aiello v. Lamitie*, No. 16-CV-0053, 2020 WL 918989, at *5 (N.D.N.Y. Feb. 26, 2020), *appeal docketed*, No. 20-1164 (2d Cir. Apr. 6, 2020).

6

his safety and to facilitate his ability to function free from bodily restraints"); *Society for Good Will to Retarded Children, Inc. v. Cuomo* ("*Society*"), 737 F.2d 1239, 1243 (2d Cir. 1984) ("It cannot be disputed that [involuntarily committed individuals] have a constitutional right to adequate food, shelter, clothing[,] . . . medical care[,] . . . to safe conditions[,] and to freedom from undue bodily restraint.").[4]

In support of her motion to dismiss, defendant Saxton argues that plaintiff has no "enforceable liberty interest with respect to being placed on MOD status."  Dkt. No. 36-1 at at 5-6.  Defendant Saxton relies on a frequently repeated statement by courts in this Circuit that civilly confined individuals do not have a right to be placed in "the least restrictive environments," a principle that was first offered in *Society*.  In that case, the Second Circuit concluded that the plaintiffs, who were intellectually disabled individuals involuntarily committed to a state-operated school, did not have a constitutional right to the "least restrictive environment."  *Society*, 737 F.2d at 1249.  This was in response to the District Court's conclusion that the plaintiffs' liberty interest in freedom from undue bodily restraint included a right to be moved out of the state-operated school and into a less-restrictive community placement.  *Id.*  Relying on *Youngberg*, the Second Circuit rejected the District Court's analysis and emphasized that a person's liberty interest in freedom from undue bodily restraint is impacted only when the professional's judgment at issue violates professional norms.  *Id.* at 1246.  Specifically, the Second Circuit explained:

> [In *Youngberg*], the Supreme Court held that whether the state

---

[4] In addition to those "protected interests which originate in the Constitution itself, constitutionally protected liberty or property interests may have their source in positive rules of law creating a substantive entitlement to a particular government benefit." *Augustin v. Sava*, 735 F.2d 32, 37 (2d Cir. 1984).

7

> has provided the necessary safe conditions and freedom from undue restraint is determined by ascertaining whether professional judgment in fact was exercised. The constitutional norm is violated only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.

*Id.* (internal quotation marks and citation omitted).

The District Court cases cited to by defendant Saxton in support of her motion to dismiss were issued on summary judgment after examining the full record and concluding that the professionals in those cases acted in accordance with the "professional standard" test set forth in *Youngberg*. *See, e.g., Aiello*, 2020 WL 918989, at *5-7 (concluding that the record evidence demonstrated that "Mr. Nowicki, Mr. Fullem, and Defendants Lamitie, Cebula, Bill, and Gray properly exercised professional judgment in placing Plaintiffs on MOD status" because "it is clear that Plaintiffs' conduct – intentionally disregarding staff direction and displaying hostile behavior – posed a 'risk of serious impending danger to the facility' that had the 'potential to become pervasive throughout the secure treatment facility'"); *Haden v. Hellinger*, No. 14-CV-0318, 2016 WL 8673144, at *12 (N.D.N.Y. Sept. 30, 2016) (concluding that "no reasonable factfinder could conclude, based on all of the record evidence, that the decisions to place [the plaintiff] on restricted status were not supported by adequate professional judgment"); *McChesney v. Hogan*, No. 08-CV-0163, 2010 WL 3602660, at *12 (N.D.N.Y. Aug. 17, 2010) (concluding, after an examination of the record evidence, that the Court should "defer to the professional judgment of the treatment providers at the Center, including to determine the appropriate treatment modality, and finds

8

no constitutional infirmity in the use of the MOD unit for that purpose"); *Yeldon v. Hogan*, No. 08-CV-0769, 2010 WL 983819, *5 (N.D.N.Y. Mar. 15, 2010) ("The record before us shows that the MOD program was implemented for legitimate reasons made by qualified professionals."). Indeed, the Second Circuit in *Society* also acknowledged that record evidence (by way of expert testimony) may be useful in "shed[ding] light on what constitutes minimally accepted standards across a profession." 737 F.2d at 1248; *see also Youngberg*, 457 U.S. at 323 n.31 ("[Expert testimony] may be relevant to whether petitioners' decisions were a substantial departure from the requisite professional judgment.").

The Court disagrees, however, that the foregoing cases stand for the singular proposition that placement in MOD status at the CNYPC can never implicate an individual's liberty interests. This case law does not preclude a CNYPC resident-plaintiff from asserting that the restrictions imposed on him in the CNYPC (an involuntarily committed setting), including placement on MOD status, deprived him of one of his many enumerated liberty interests (for example, rights to adequate food, shelter, clothing, medical care, training, and treatment; safe, decent, and humane conditions of confinement; and freedom from undue bodily restraint).

As relevant in this action, plaintiff denies that he is responsible for taping pictures of children in the magazines found during the search of his room, and plaintiff offers an alternative explanation for who may be responsible. Am. Compl. at 9; *see also* Compl. at 5, 6. Plaintiff further alleges that, two days after CNYPC staff found the magazines in his room, defendant Saxton "approached [plaintiff and] gave [him a] MOD sheet loss of privileges for 28 days without any form[] of hearing and told [plaintiff] to go with the property room staffs to

9

take [his] stuff from [his] room." *Id.* at 7.  While these allegations do not appear to invoke a liberty interest, plaintiff's original complaint alleges that the 28-day MOD placement "led up to [plaintiff] being fully restrain[ed]."  *See* Compl. at 7.  In addition, in response to defendant Saxton's motion to dismiss, plaintiff compares MOD status to "tier 2 charges in prison" where "inmates property is not taken."[5]  Dkt. No. 39 at 2.  Tier II hearings in prisons operated by the New York State Department of Corrections and Community Supervision involve mid-tier infractions that can result in penalties that include isolated confinement for a period of time in the special housing unit.  7 N.Y.C.R.R. §§ 253.7, 270.3.  Liberally construing all of plaintiff's allegations, plaintiff appears to be asserting that his liberty interests in freedom from undue bodily restraint, minimally adequate treatment, and/or adequate conditions of confinement were violated when defendant Saxton imposed the 28-day MOD status on plaintiff, and this was not rendered with the requisite professional judgment in light of plaintiff's denial of responsibility for the magazines and the lack of hearing.

Because of the early juncture of this action, and likely by virtue of plaintiff's pro se status, it is not entirely clear what happened during plaintiff's 28-MOD placement.  For example, the amended complaint does not specify what MOD status involves at the CNYPC, and what privileges plaintiff lost while on MOD status.  Nevertheless, in light of all of the

---

[5] The Court may properly consider plaintiff's original complaint, as well as plaintiff's response to defendant Saxton's motion to dismiss, when evaluating the plausibility of his claims.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Walker v. Briggs*, No. 11-CV-0959, 2011 WL 5866232, at *2 n.5 (N.D.N.Y. Nov. 22, 2011) (considering both the plaintiff's original and amended pleadings when assessing the sufficiency of the pleadings pursuant to 28 U.S.C. § 1915) (citing *Hale v. Rao*, No. 08-CV-0612, 2009 WL 3698420, at *3 n.8 (N.D.N.Y. Nov. 3, 2009) ("Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum.")).

10

allegations that plaintiff has set forth in his pleadings, and mindful of the obligation to liberally construe those pleadings, at this stage of the proceedings the Court cannot say, as a matter of law, that defendant Saxton did not violate plaintiff's due process rights. Accordingly, defendant Saxton's motion to dismiss that claim is denied.

### b. First Amendment Claim

Plaintiff's First Amendment claim asserted against defendant Saxton arises from allegations that she has restricted plaintiff's access to magazine publications following the search of his room on March 23, 2020.  Am. Compl. at 7.  In support of her motion to dismiss, defendant Saxton analogizes plaintiff's rights, as a civilly confined resident in the CNYPC, to prison inmates, and therefore argues that civilly confined residents have no constitutional right to non-religious magazines and non-legal reading materials.  Dkt. No. 36-1 at 7 (citing *Fox v. Lee*, No. 15-CV-0390, 2018 WL 1211111, at *18 (N.D.N.Y. Feb. 5, 2018)); *see also* Dkt. No. 32 at 8 (citing *Fox*).

"[T]here can be little doubt that civilly committed persons . . . retain certain First Amendment rights, especially given the Supreme Court's declaration that involuntarily committed persons 'are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'"  *Yeldon*, 2010 WL 9833819, at *7 (quoting *Youngberg,* 457 U.S. at 322).  Although neither the Supreme Court nor the Second Circuit has yet articulated the "appropriate standard to be applied when a person who is civilly committed challenges an action or policy on First Amendment grounds," *id.*, courts in this Circuit have routinely applied the test set forth in *Turner v. Safley*, 482 U.S. 78 (1987), which examines four factors to determine whether a prison's prohibitions on an

11

inmate's exercise of his constitutional rights are permissible. *See, e.g., Ahlers v. Townsend*, No. 12-CV-0575, 2014 WL 4365277, at *4 (N.D.N.Y. Aug. 28, 2014); *Balkum v. Sawyer*, No. 06-CV-1467, at *5 (N.D.N.Y. Oct. 21, 2011); *Yeldon*, 2010 WL 983819, at *7, *aff'd* 400 F. App'x 580 (2d Cir. 2010). More specifically, a court considers (1) whether prohibiting a person from exercising a constitutional right is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising that right; (3) what effect accommodation of the interest would have on facility staff, other residents, and the allocation of facility resources; and (4) whether there are ready alternatives available that continue to serve the facility's interest without impinging constitutional rights. *Turner*, 482 U.S. at 89-90.

In light of the early procedural juncture of this action and the limited allegations set forth in the amended complaint, the Court cannot render a full analysis under *Turner*. Plaintiff denies responsibility for the pictures of the children taped inside of the magazines found in his room, however, and the Court must accept that allegation as true for purposes of analyzing defendant Saxton's motion to dismiss. Thus, as to the first *Turner* factor, it is unclear at this stage whether terminating plaintiff's access to magazines is legitimately related to a governmental interest if he did not alter the magazines found in his room. While plaintiff's claim may ultimately be subject to dismissal upon a more fully developed record, dismissal at this stage is not warranted in light of the allegations before the Court. Accordingly, defendant Saxton's motion to dismiss plaintiff's First Amendment claim is denied at this stage. *See Shakur v. Thomas*, No. 14-CV-0427, 2016 WL 11478237, at *8 (N.D.N.Y. June 2, 2016), *report and recommendation adopted by* 2016 WL 4617242 (N.D.N.Y. Sept. 6, 2016), (denying the defendant's Rule 12(b)(6) motion to dismiss because

"[t]he *Turner* analysis required to determine whether [the defendant] had a legitimate penological interest in denying Plaintiff his [religious] meals . . . will be fact intensive"); *Ford v. Fischer*, No. 09-CV-0723, 2011 WL 856416, at *6 (N.D.N.Y. Jan. 31, 2011), *report and recommendation adopted by* 2011 WL 846860 (N.D.N.Y. Mar. 9, 2011), ("Given that the legitimacy of the penological justification for a mail watch is difficult to validate, in the context of a Rule 12(b)(6) motion, this court finds, that plaintiff's First Amendment cause of action against [the] defendants . . . should not be dismissed at this stage of the proceedings.").

    **B.**    **Plaintiff's Motions to Supplement the Amended Complaint**

        **1. Legal Standard Governing Motions to Supplement a Pleading**

Motions to supplement a pleading are governed by Rule 15(d) of the Federal Rules of Civil Procedure, which provides that the Court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). A supplemental pleading must allege facts "connect[ed] . . . to the original pleading." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995); *see also United States v. Russell*, 241 F.2d 879, 882 (1st Cir. 1957) (concluding that a supplemental pleading "is designed to obtain relief along the same lines, pertaining to the same cause, and based on the same subject matter or claim for relief, as set out in the original complaint"); *Albrecht v. Long Island R.R.*, 134 F.R.D. 40, 41 (E.D.N.Y. 1991) ("A supplemental pleading is designed to cover matters that occur subsequent to the filing of the complaint, but pertain to the original pleadings.").

The standard for a motion to supplement is the same as for a motion to amend the pleadings under Fed. R. Civ. P. 15(a). *Klos v. Haskell*, 835 F. Supp. 710, 715 (W.D.N.Y.

13

1993).  The Court has discretion whether to grant leave to amend a pleading.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  In exercising this discretion, the Court must act pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, granting leave to amend "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a); *Foman*, 371 U.S. at 182.  In the case of an application for leave to file a supplemental pleading, permission should be freely granted where such supplementation "will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party."  *Bornholdt v. Brady*, 869 F.2d 57, 68 (2d Cir. 1989); *see also Evans v. Syracuse City School Dist.*, 704 F.2d 44, 46 (2d Cir. 1983) ("This liberality of pleading or freedom of amendment, however, is limited when there is undue delay, bad faith, or dilatory motive on the part of the moving party, and undue prejudice to the opposing party.").  Finally, "[w]here it appears that granting leave to amend is unlikely to be productive" or the amendment is futile, "it is not an abuse of discretion to deny leave to amend" or supplement the complaint.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### 2. Analysis

#### a. MOD Status Claims

In the first proposed supplemental complaint, plaintiff alleges that on August 5, 2020, and August 26, 2020, he was placed on MOD status again for 14-day periods.  First Suppl. Compl. at 3-4.  Plaintiff does not allege who placed him on MOD status on either date.  *Id.*  Plaintiff alleges that, with respect to the MOD status imposed on August 5, 2020, he had not violated any rules "but [was] only talking to a resident outside his door."  *Id.* at 3.  Plaintiff

14

does not offer any explanation for the imposition of MOD status on August 26, 2020. *Id.*

Plaintiff's request to supplement his complaint to assert additional due process claims arising from the foregoing allegations is denied because plaintiff fails to allege that the additional MOD placements are related to plaintiff's underlying claims or allegations. Indeed, none of the defendants are alleged to have placed plaintiff on MOD status either on August 5, 2020, or August 26, 2020. In addition, there are no allegations, for example, that plaintiff was placed on MOD status again in August because of the magazines found in his room back in March. Even liberally construed, the proposed supplemental complaint seems to allege that the additional MOD placements were separate and apart from the fallout from the room search on March 23, 2020 – which is the genesis of plaintiff's claims asserted in his original and amended complaints. Because the allegations concerning plaintiff's placement on MOD status in August 2020 do not relate to the underlying allegations in this action, plaintiff's first motion to supplement is denied as to these claims.

### b. First Amendment Claim Asserted Against Defendant Saxton

Plaintiff also seeks permission to supplement his amended complaint to allege that on August 28, 2020, after plaintiff again denied responsibility for taping pictures of children inside his magazines, defendant Saxton revoked plaintiff's right to call his brother, who is an inmate confined in a prison facility. First Suppl. Compl. at 2-3.

Because these new allegations involving defendant Saxton are related to plaintiff's original First Amendment claim insofar as defendant Saxton revoked another one of plaintiff's privileges as a result of the magazines found in his room on March 23, 2020, and mindful of the Court's obligation to liberally construe a pro se plaintiff's pleadings, plaintiff's

15

first motion to supplement the amended complaint is granted with respect to this claim.

### c. First Amendment Claims Asserted Against Defendant Collins

Plaintiff alleges in his second motion to supplement the amended complaint that, since and because he has filed this lawsuit, defendant Collins has retaliated against plaintiff by harassing him. Second Suppl. Compl. at 2. Specifically, plaintiff alleges that defendant Collins complained to plaintiff that Collins needed to "save up all [of] his money to hire and pay for his lawyers," which plaintiff alleges defendant Collins should not have said to him. *Id*. Separately, on December 11, 2020, defendant Collins allegedly stared at plaintiff and refused to respond to his request for a roll of toilet paper. *Id.* The next day, on December 12, 2020, defendant Collins allegedly "threw [plaintiff's breakfast] tray at [him] and walked off." *Id.*

These new allegations are not related to plaintiff's underlying claims asserted against defendant Collins. More specifically, as described above in Part I of this Decision and Order, plaintiff's amended complaint asserts excessive force, medical indifference, and court access claims against defendant Collins arising from defendant Collins' conduct on or about March 23, 2020. The retaliation claims plaintiff now seeks to assert against defendant Collins are separate and apart from those previously asserted claims and arise from defendant Collins' recent conduct. Plaintiff's motion to supplement the amended complaint is denied on this ground alone. *See, e.g., Klos*, 835 F. Supp. at 716 (denying the plaintiff's motion to supplement because the newly proposed retaliation claim was not sufficiently linked to plaintiff's original claims).

In addition, plaintiff's retaliation claims are futile. To state a cognizable First

16

Amendment retaliation claim, a plaintiff must plausibly allege, inter alia, that the defendant's retaliatory conduct amounts to adverse action. *See Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). "Adverse action" consists of conduct that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes*, 239 F.3d at 493. Vague and isolated incidents of intimidation or threats, like staring at plaintiff when he requested toilet paper, do not rise to the level of adverse action. *See, e.g., Tirado v. Shutt*, No. 13-CV-2848, 2015 WL 774982, at *12 (S.D.N.Y. Feb. 23, 2015) (dismissing the plaintiff's retaliation claim against the defendant where the plaintiff alleged only that the defendant "paced behind [the plaintiff's family] in [the prison]'s visiting room and glared"). In addition, in this circuit, courts have routinely concluded that the type of physical assault suffered by plaintiff in this case (i.e., having a food tray thrown at him) is de minimis for purposes of a retaliation claim and is not sufficient to satisfy the adverse action element. *See Woodward v. Afify*, No. 14-CV-0856, 2018 WL 9875253, at *11, (W.D.N.Y. Sept. 28, 2018) (concluding that a single punch in the chest does not constitute adverse action); *Flynn v. Ward*, No. 15-CV-1028, 2018 WL 3195095, at *9 (N.D.N.Y. June 7, 2018) (concluding that the plaintiff's allegations that the defendant "push[ed] him around" were de minimis and does not constitute adverse action); *Morgan v. Luft*, No. 15-CV-0024, 2017 WL 3511158, at *8 (N.D.N.Y. June 22, 2017) (allegations that the defendant conducted "a rough pat frisk" are not sufficient); *Sloane v. Mazzuca*, No. 04-CV-8266, 2006 WL 3096031, at *13-14 (S.D.N.Y. Oct. 31, 2006) (concluding that throwing a food tray at the plaintiff does not constitute adverse action); *Rivera v. Goord*, 119 F. Supp. 2d 327, 340 (S.D.N.Y. 2000) ("[The plaintiff]

17

states only that [the defendants] 'shoved' him while taking him to the . . . Special Housing Unit . . . . . Such actions, even if proven at trial, would not chill a person of ordinary firmness from continuing to engage in First Amendment activity."). Accordingly, because the Court also finds that none of the allegations set forth in plaintiff's supplemental complaint give rise to a cognizable retaliation claim against defendant Collins, the second motion to supplement is denied.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that defendant Saxton's partial motion to dismiss the amended complaint (Dkt. No. 36) is **DENIED**; and it is further

**ORDERED** that plaintiff's first motion to supplement the amended complaint (Dkt. No. 29) is **GRANTED in part** only to the extent that plaintiff asserts an additional First Amendment claim against defendant Saxton arising from allegations that defendant Saxton revoked plaintiff's right to call his brother; and it is further

**ORDERED** that, except as to the foregoing, plaintiff's first motion to supplement the amended complaint (Dkt. No. 29) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court is respectfully directed to append plaintiff's first supplemental complaint (Dkt. No. 29-1) to the amended complaint, which, together, now constitutes the operative pleading in the action; and it is further

**ORDERED** that plaintiff's second motion to supplement the amended complaint (Dkt. No. 41) is **DENIED**; and it is further

**ORDERED** the Clerk serve a copy of this Decision and Order on the parties, as well

as serve any unreported cases cited to in this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: January 15, 2021

Brenda K. Sannes
U.S. District Judge