**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL MYERS,

                            Plaintiff,

        - v -                           9:20-CV-465
                                               (BKS/DJS)

ERICA SAXTON *et al.*,

                           Defendants.

**APPEARANCES:**                     **OF COUNSEL:**

MICHAEL MYERS
Plaintiff, *Pro Se*
13462261604
CNYPC
P.O. Box 300
Marcy, New York 13403

HON. LETITIA JAMES           KONSTANDINOS LERIS, ESQ.
New York State Attorney General    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

               <u>**REPORT-RECOMMENDATION and ORDER**</u>[1]

        Pro se Plaintiff Michael Myers ("Plaintiff") brought this action under 42 U.S.C. §

1983 alleging that Defendants violated his constitutional rights under the First and

Fourteenth Amendments while he was civilly confined at Central New York Psychiatric

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

Facility. Dkt. No. 1, Compl. Following initial review, United States District Judge Brenda K. Sannes ordered that Plaintiff's claim for excessive force against Defendant Collins and an unnamed Doe Defendant could proceed, in addition to claims brought against Defendant Saxton for a Fourteenth Amendment due process violation based on his placement on MOD status, and a First Amendment claim based on an indefinite period of magazine restrictions. Dkt. No. 3. Plaintiff filed an Amended Complaint on July 8, 2020. Dkt. No. 10, Am. Compl. Defendant Saxton subsequently filed a Motion to Dismiss Plaintiff's original Complaint on July 23, 2020, Dkt. No. 13, without acknowledging Plaintiff's Amended Complaint. *See* Dkt. No. 21 at p. 2. Defendant's motion to dismiss was denied as moot, and Plaintiff's Amended Complaint was accepted for filing as to the following claims: (1) Fourteenth Amendment due process claims against Defendants Ryan Collins and Michael Wilkinson; (2) Fourteenth Amendment due process claim for denial of medical treatment against Defendant Collins; (3) First Amendment access to courts claim against Defendants Collins and Wilkinson; (4) Fourteenth Amendment due process claim against Defendant Saxton regarding his placement on MOD status; and (5) First Amendment claim against Defendant Saxton regarding the imposition of an indefinite period of magazine restriction. Dkt. No. 21 at pp. 6-11.

Defendant Saxton filed a Motion to Dismiss on October 28, 2020, seeking dismissal of Plaintiff's Fourteenth Amendment due process claim regarding his placement on MOD status and the First Amendment claim based on the magazine access restriction. Dkt. No. 36. On January 15, 2021, Chief Judge Sannes denied the Motion to

2

Dismiss.[2]  Dkt. No. 44.  Defendants have now moved for summary judgment requesting that the Court dismiss all of Plaintiff's claims.  Dkt. No. 89.  Plaintiff filed a Response in opposition to the Motion, Dkt. No. 94, Defendants filed a Reply, Dkt. No. 95, and Plaintiff filed a Sur-Reply, Dkt. No. 96.  For the following reasons, this Court recommends that the Motion for Summary Judgment be granted in part and denied in part.

## I.  BACKGROUND

Plaintiff is civilly confined at Central New York Psychiatric Center ("CNYPC") pursuant to Article 10 of New York State's Mental Hygiene Law.  Dkt. No. 89-1, Declaration of Kostas Leris ("Leris Decl."), Ex. A, Plaintiff's Deposition ("Pl.'s Dep.") at p. 13; Dkt. No. 89-6, Defs.' Rule 56.1 St. at ¶ 1.[3]  The events giving rise to his claims began on March 23, 2020.  *See* Am. Compl. at p. 2; Defs.' Rule 56.1 St. at ¶ 12.  On that day, CNYPC staff were conducting "environmental inventories" of the resident dorm rooms on Ward 604 to ensure habitability and compliance with facility rules.  Defs.' Rule 56.1 St. at ¶ 13; Dkt. No. 89-2, Declaration of Michael Wilkinson ("Wilkinson Decl.") at ¶ 9.  Plaintiff became agitated during the inventory of his room and went on to cause a disruption in the day room common area.  Wilkinson Decl. at ¶¶ 10-11 & 16, Ex. A; Pl.'s Dep. at p. 47; Dkt. No. 89-5, Declaration of Harry Smith ("Smith Decl.") at ¶ 22; DVD No. 2020-042 (CS-606 Ward 604 Day Room, at 17:35-18:30).  Plaintiff was asked to exit

---

[2] That Decision also granted in part Plaintiff's First Motion to Supplement the Amended Complaint, Dkt. No. 29, to the extent that it added an additional First Amendment claim against Defendant Saxton arising from allegations that Defendant Saxton revoked Plaintiff's right to call his brother.  Dkt. No. 44.  This claim was later voluntarily dismissed by stipulation.  Dkt. Nos. 79 & 80.

[3] For efficiency purposes, the Court has cited to the factual allegations in Defendants' Rule 56.1 Statement which Plaintiff specifically admitted in his response.

the common area and go to the side room but refused to do so voluntarily.  Wilkinson Decl. at ¶ 20, Ex. A; Dkt. No. 89-3, Declaration of Ryan Collins ("Collins Decl.") at ¶ 20; Pl.'s Dep. at pp. 59-60; Smith Decl. at ¶ 22, DVD #2020-042 (CS-606 Ward 604 Day Room, at 18:22-18:30).  As a result, Defendants Collins and Wilkinson took Plaintiff by his arms and escorted him to the Ward 404 side room.  Defs.' Rule 56.1 St. at ¶ 35.  Inside the Ward 404 side room, Plaintiff was taken to the ground by staff and forcibly placed onto a restraint bed and secured in five-point restraints.  Defs.' Rule 56.1 St. at ¶ 40; Wilkinson Decl. at ¶ 32, Ex. A; Smith Dec. ¶ 22, DVD # 2020-042 (CS-410 Ward 404 Seclusion Room at 23:31 – 29:00).

Dr. Cynthia Provow, the physician on call, arrived at the side room to examine Plaintiff but he refused to speak with her and continued to be combative.  Dkt. No. 90, Declaration of Cynthia Provow ("Provow Decl.") at ¶ 14; Defs.' Rule 56.1 St. at ¶ 60.  Eventually, Plaintiff was administered medication by injection, was able to calm down, and was released from restraints.  Provow Decl. at ¶ 25, Ex. A; Defs.' Rule 56.1 St. at ¶¶ 62-63.  As a result of the events on March 23, Plaintiff was placed on Motivation on Deck ("MOD") status, which resulted in the loss of certain privileges.  Defs.' Rule 56.1 St. at ¶¶ 78-79, 82.  He also was subject to a magazine restriction due to inappropriate magazine cutouts of prepubescent children discovered during the eventual search of his room.  Defs.' Rule 56.1 St. at ¶¶ 89-90; Saxton Decl. at ¶ 40, Ex. C.

Plaintiff asserts multiple violations of his constitutional rights arising from these events.  First, he alleges that Defendants Collins and Wilkinson used excessive force by slamming him against an elevator door and slamming him on the ground and restraint

bed. Am. Compl. at ¶¶ 15, 19 & 20. Second, Plaintiff asserts that Defendant Collins prevented him from receiving medical treatment after he was placed in restraints. *Id.* at ¶¶ 26-28. Third, Plaintiff asserts that his First Amendment rights to court access were violated following the search of his room because Defendants Collins and Wilkinson destroyed his legal materials related to a pending appeal. *Id.* at ¶¶ 33-34. Fourth, Plaintiff alleges that his due process rights were violated when Defendant Saxton placed him on MOD status. *Id.* at ¶¶ 40-44. Finally, Plaintiff also asserts that Defendant Saxton violated his First Amendment rights by placing him on an indefinite period of magazine restriction. *Id.* at ¶¶ 45-53.

## II. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(C); see also *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party

has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). In considering a summary judgment motion, the Court's role "is carefully limited to discerning whether there are any genuine issues of material fact to be tried." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), accord, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"A party opposing summary judgment is required to submit admissible evidence." *Perry v. Rupert*, 2016 WL 11478229, at *3 (N.D.N.Y. Apr. 19, 2016) (citing *Spiegel v.*

*Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010)).[4]  "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (emphasis in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  As a result, in order to defeat summary judgment, "nonmoving parties may not rely on conclusory allegations or unsubstantiated speculation."  *Id.* (citation and internal quotation marks omitted).  "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful."  *Id.* (citation and internal quotation marks omitted).  Statements "that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

## III. DISCUSSION

### A. Fourteenth Amendment Claims

#### 1. *Excessive Force Claim against Defendants Collins and Wilkinson*

Plaintiff's claim for excessive force as a civilly confined individual is governed by the Due Process Clause of the Fourteenth Amendment, rather than by the Cruel and Unusual Punishments Clause of the Eighth Amendment.  *Charles v. Orange Cnty.*, 925 F.3d 73, 85 (2d Cir. 2019).  In *Kingsley v. Hendrickson*, the Supreme Court addressed the proper standard for evaluating excessive force claims brought under the Fourteenth

---

[4] Copies of unreported decisions are being provided to Plaintiff with this decision.

Amendment by a pretrial detainee and concluded that "courts must use an objective standard" under which the plaintiff "must show only that the force purposely or knowingly used against him was objectively unreasonable."  576 U.S. 389, 396-97 (2015).  That standard applies here even though Plaintiff was civilly confined, not a pretrial detainee, because "[t]he distinction *Kingsley* drew was not between pretrial detainees and non-detainees.  Instead, it was between claims brought under the Eighth Amendment's Cruel and Unusual Punishment Clause and those brought under the Fourteenth Amendment's Due Process Clause." *Edrei v. Maguire*, 892 F.3d 525, 535 (2d Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. at 400-01).  As a result "*Kingsley* provides the appropriate standard for all excessive force claims brought under the Fourteenth Amendment." *Id.* at 537.

Assessing the objective reasonableness of any use of force necessarily depends on the facts and circumstances of each case, but relevant factors include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley v. Hendrickson*, 135 S. Ct. at 2473 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Plaintiff's Complaint alleged that excessive force was used while he was being escorted from the Ward 604 day room to the Ward 404 side room and again while he was being restrained in the side room.  Am. Compl. at ¶¶ 15, 19 & 20.  Defendants Collins and Wilkinson assert that they are entitled to summary judgment on this claim because

the record clearly shows that the force used was objectively reasonable under the circumstances. Dkt. No. 89-7, Defs.' Mem. of Law at pp. 9-12.

Plaintiff's own admissions demonstrate that on the day of the incident, he was in an agitated state following staff attempts to conduct an environmental inventory of his room. Pl.'s Dep. at pp. 47-49. Plaintiff refused several direct orders from staff during this search, first by refusing to remove linen covering his furniture and then by physically blocking the entrance to his room by sitting in a chair in front of the door. Wilkinson Decl. ¶¶ 10-11, Ex. A; Pl.'s Dep., p. 47; Collins Decl. ¶¶ 10, 12, Ex. A; Smith Decl. at ¶¶ 20, 22; DVD # 2020-042 (CS-602 Ward 604 West Corridor at 4:40 – 17:13). Plaintiff was offered the opportunity to observe as the search was conducted but chose instead to walk to the unit common area. Wilkinson Decl. at ¶ 14, Ex. A; Smith Decl. at ¶ 22, DVD # 2020-042 (CS-602 Ward 604 West Corridor, at 17:13-17:22). While in the hallway, Plaintiff hit the emergency response red phone, knocking it off its base, which caused an alarm to sound and resulted in a staff response to the day room. Wilkinson Decl. at ¶ 15, Ex. A; Pl.'s Dep. at p. 53; Smith Decl. at ¶ 22, DVD # 2020-042 (CS-605 Ward 604 Day Room Corridor at 17:44). In the day room, Plaintiff began to cause a disruption in front of other residents in an effort to "protest[] the treatment." Pl.'s Dep. at p. 56; Wilkinson Decl. at ¶ 16, Ex. A; Smith Decl. at ¶ 22, DVD # 2020-042 (CS-606 Ward 604 Day Room at 17:35-18:30). According to the CNYPC Resident Handbook, disruptions in a public area such as the day room will require the resident to be removed from the area. Saxton Decl. Ex. D, p. 31 at ¶ 29.

Defendants Collins and Wilkinson approached Plaintiff and informed him that he would need to go to the side room due to his noncompliant behavior. Wilkinson Decl. at ¶ 20, Ex. A; Collins Decl. at ¶ 19, Ex. A; Pl.'s Dep. at pp. 58-59; Smith Decl. at ¶ 22, DVD # 2020-042, CS-606 (Ward 604 Day Room at 17:35-18:30). Plaintiff was offered the opportunity to exit the room voluntarily, but he refused. *Id.* Defendants Collins and Wilkinson took hold of each of Plaintiff's arms to escort him to the side room. Defs.' Rule 56.1 St. at ¶ 35; Smith Decl. at ¶ 22, DVD # 2020-042 (CS-606 Ward 604 Day Room at 18:22-18:30). During the walk to the side room, Plaintiff threatened to punch Defendant Collins in the face, stated that he was going to get a chair to hit Collins over the head with, and threatened to kick Defendant Wilkinson. Defs.' Rule 56.1 St. at ¶ 36; Pl.'s Dep. at pp. 61-62; Collins Decl. at ¶ 20. Plaintiff stated that because he was upset, he continued to resist Defendants by forcing his arms in towards his body while Defendants held his arms and attempted to lead him to the side room. Pl.'s Dep. at p. 61.

Plaintiff also alleges that he was "bounced off the elevators." Pl.'s Dep. at pp. 64-65; Am. Compl. at ¶ 15. Defendants deny this allegation. *See* Collins Decl. at ¶ 23. Some, but not all, of the escort was recorded. Plaintiff's arrival at the elevator, however, is clearly recorded and demonstrates that he was not bounced off the elevator door as he alleges in the Amended Complaint. Smith Decl. at ¶ 22, DVD # 2020-042 (CS-701, Elevator Car 2 at 19:28-20:11). Since it does not appear that Plaintiff alleges the mere escort from the day room was unreasonable force, the Court recommends that summary judgment be granted with respect to so much of Plaintiff's excessive force claim as alleged that he was bounced off the elevator doors.

10

Plaintiff also alleges excessive force upon his arrival at the side room. Plaintiff's staff escorts released his arms when they entered the room. Pl.'s Dep. at p. 68. Plaintiff was then asked to remove his watch and headphones, items which are not permitted while in the side room. Defs.' Rule 56.1 St. at ¶ 38; Pl.'s Dep. at p. 68; Smith Decl. at ¶ 22, DVD # 2020-042 (CS-410 Ward 404 Seclusion Room at 20:35-20:43). Plaintiff refused to turn over his watch and was immediately brought to the ground by four staff members who each took hold of one of his limbs to restrain him. Smith Decl. at ¶ 22, DVD # 2020-032 (CS-410 Ward 404 Seclusion Room at 20:35-21:25). Plaintiff admits that he continued to resist staff while being restrained on the floor. Defs.' Rule 56.1 St. at ¶ 44.

The entire incident in the side room was recorded. That video undeniably shows that force was used against Plaintiff. And while it also provides significant support for the version of events put forth by Defendants, the Court does not believe it is a basis for summary judgment. Plaintiff contends that the force was unreasonable. Consideration of some of the *Kingsley* factors leads the Court to conclude that questions of fact exist as to whether a jury could find for Plaintiff here.

Plaintiff being taken down to the ground happens almost immediately after he refuses to turn his watch over to staff. Smith Decl. at ¶ 22, DVD # 2020-042 (CS-410 Ward 404 Seclusion Room at 20:35-21:45).[5] It is not clear that other than direction being given to Plaintiff, any effort was made to "temper" the situation before force was used. It is also unclear whether Plaintiff's concededly agitated state necessitated him being

---

[5] Some of this interaction actually takes place outside the frame of the video and is not completely captured.

taken to the floor and then forcibly secured using five point restraints. Collins Decl. at ¶ 32. Again, the record suggests a clear basis from which a jury could find that these actions were reasonable, but the record before the Court "presents quintessential fact questions that cannot be resolved on summary judgment." *McGinnis v. Crissell*, 2018 WL 4635707, at *4 (N.D.N.Y. Apr. 18, 2018), *report and recommendation adopted*, 2018 WL 3970668 (N.D.N.Y. Aug. 20, 2018); *see also Mills v. Fenger*, 216 F. App'x 7, 9 (2d Cir. 2006) ("factual disputes as to the degree of force actually employed and its reasonableness, including a dispute about whether any force was used at all, preclude the grant of summary judgment.") (internal citation and quotation marks omitted).[6]

### 2. Interference with Medical Treatment against Defendant Collins

Plaintiff's Complaint asserted a claim against Defendant Collins stemming from allegations that Defendant Collins prevented medical providers from providing care to Plaintiff following the use of force incident on March 23, 2020. Am. Compl. at ¶¶ 26-28. Defendant Collins asserts that he is entitled to summary judgment on this claim because the record and video evidence conclusively demonstrates that he did not prevent Plaintiff from receiving any medical treatment on that date, nor is there any evidence of a sufficiently serious medical condition as required to establish this claim. Defs.' Mem. of Law at pp. 13-18.

Plaintiff's claim for medical indifference as a civilly confined individual is governed by the Due Process Clause of the Fourteenth Amendment, rather than by the

---

[6] The same questions of fact that preclude summary judgment on the merits of the excessive force claim preclude summary judgment on the basis of qualified immunity.

Cruel and Unusual Punishments Clause of the Eighth Amendment. *Charles v. Orange Cnty.*, 925 F.3d 73, 85 (2d Cir. 2019); *Williams v. Sykes*, 2019 WL 2374116, at *2 (N.D.N.Y. May 10, 2019), *report and recommendation adopted*, 2019 WL 2369882 (N.D.N.Y. June 5, 2019). The standard under the Due Process Clause is similar in this context to that under the Eighth Amendment, requiring the plaintiff first to satisfy "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of [constitutional rights]" and second, to satisfy a "'mental element prong' - showing that the officer acted with at least deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *see also Bell v. Carson*, 2018 WL 5993686, at *2 (N.D.N.Y. Nov. 15, 2018). Both prongs of the test are defined objectively under the Fourteenth Amendment. *Darnell v. Pineiro*, 849 F.3d at 35. "As a general matter, non-medical personnel may be liable for deliberate indifference to medical needs where a plaintiff demonstrates that such personnel intentionally denied or delayed access to medical care or intentionally interfered with medical treatment once [it] was prescribed." *Starling v. Syracuse Police Dep't*, 2019 WL 6974731, at *5 (N.D.N.Y. Dec. 20, 2019), *report and recommendation adopted*, 2020 WL 1140664 (N.D.N.Y. Mar. 9, 2020).

Plaintiff asserted in his Complaint that when he was restrained in the side room on March 23, 2020, a medical doctor entered the room several times "wanting to give [Plaintiff] proper medical attention and Ryan Collins ordered the doctor out of the room." Am. Compl. at ¶ 26. Plaintiff also alleged that Defendant Collins has "a duty to provide medical services" in his role at CNYPC but that Collins "ordered the medical doctor out

of the room because he security." *Id.* at ¶¶ 27 & 28. Dr. Cynthia Provow[7] was the physician on duty for Wards 604 and 404 on March 23, 2020. Provow Decl. at ¶ 9. Dr. Provow stated that she was informed at approximately 9:29 AM that Plaintiff had been placed in the Ward 404 side room due to disruptive and threatening behavior. Provow Decl. at ¶¶ 10-11. At approximately 9:33 AM, Dr. Provow arrived at the Ward 404 side room to evaluate Plaintiff. Provow Decl. at ¶ 12; Smith Decl. at ¶ 22, DVD # 2020-042 (CS-410 Ward 404 Seclusion Room at 33:10-34:15).

Dr. Provow observed Plaintiff to be alert and well hydrated with no "evidence of chest pain, respiratory distress, dizziness, weakness, pain, physical discomfort, or injury." Provow Decl. at ¶ 16. Plaintiff did not complain about any injuries to Dr. Provow at that time. Defs.' Rule 56.1 St. at ¶ 65; Pl.'s Dep. at p. 96; Provow Decl. at ¶ 16. The video footage from the side room shows that Dr. Provow attempted to speak to Plaintiff, but Plaintiff refused to speak with her while Defendant Collins was in the room, stating "Doctor, will you please get him out of the room? I will not talk to you until he's out of the room." DVD # 2020-042 (CS-410 Ward 404 Seclusion Room at 33:10-33:30); Provow Decl. at ¶ 14. Dr. Provow explained to Plaintiff that Defendant Collins was required to stay in the room with her. Provow Decl. at ¶ 14; DVD # 2020-042 (CS-410 Ward 404 Seclusion Room at 33:10-34:15). Collins be seen on the video standing off to the side while Dr. Provow attempts to speak with Plaintiff. DVD # 2020-042 (CS-410 Ward 404 Seclusion Room at 33:10-34:15). At no point does Defendant Collins interact

---

[7] Dr. Provow is not named as a party in this action.

with Plaintiff or order Dr. Provow not to provide medical treatment. *Id.* Instead, Plaintiff himself refused to speak with Dr. Provow and continued to exhibit threatening behavior when she made a second attempt to speak with him. Provow Decl. at ¶19; DVD # 2020-042 (CS-410 Ward 404 Seclusion Room at 40:20-41:15). Plaintiff is depicted on video continuing to make verbal threats when staff enter the room to administer medication. DVD # 2020-042 (CS-410 Ward 404 Seclusion Room at 49:44-50:30).

The record therefore indicates that within minutes of being placed in restraints in the side room, Plaintiff was seen by a medical doctor. The record also conclusively establishes that Plaintiff refused to speak to Dr. Provow and that Defendant Collins did not prevent him in any way from receiving medical treatment. Instead, Plaintiff himself refused to interact with Dr. Provow because he wanted Defendant Collins to leave the room. Dr. Provow did not observe Plaintiff to be in any distress and did not see any visual evidence of injuries. Plaintiff has failed to set forth any evidence to demonstrate either a sufficiently serious medical condition or a denial of any medical care as required to make out a claim. Accordingly, the Court recommends summary judgment be granted as to this claim as well.

### 3. Due Process Claim against Defendant Saxton

Plaintiff's Complaint asserts a claim for violation of his Fourteenth Amendment procedural due process rights against Defendant Saxton, who placed him on MOD status following the events on March 23, 2020. Am. Compl. at ¶¶ 40-44. Defendant Saxton argues that she is entitled to summary judgment on this claim because "courts in the Second Circuit have repeatedly found that placement on MOD status at CNYPC does not

15

implicate the due process clause" and because Plaintiff did not lose any of his substantive rights by this placement.  Defs.' Mem. of Law at pp. 20-21.  Notwithstanding the issue of whether Plaintiff was even entitled to due process protection under these facts, Defendant Saxton also asserts that Plaintiff received all the process he was due.  *Id.*

The Court first notes that Defendant's assertion that placement on MOD status can never implicate the due process clause is inconsistent with this Court's prior holdings on the issue.  Chief Judge Sannes has previously rejected such a broad interpretation of the case law, disagreeing that the line of cases cited by Defendant here "stand for the singular proposition that placement in MOD status at the CNYPC can never implicate an individual's liberty interests." *Myers v. Saxton*, 2021 WL 149062, at *4 (N.D.N.Y. Jan. 15, 2021).  That holding continues to be the law of the case.  Instead, Chief Judge Sannes clarified that a CNYPC resident-plaintiff could assert "that the restrictions imposed on him by placement on MOD status "deprived him of one of his many enumerated liberty interests (for example, rights to adequate food, shelter, clothing, medical care, training, and treatment; safe, decent, and humane conditions of confinement; and freedom from undue bodily restraint)." *Id.*

Defendant Saxton indicates that Plaintiff was placed on MOD status "due to his non-compliant, verbally threatening, and aggressive behavior."  Saxton Decl. at ¶ 31.  While on MOD status, Plaintiff retained the right to leave his room, attend group treatment, eat meals in the mess hall, participate in recreation, acquire property from the commissary, and to take showers when he wished.  Saxton Decl. at ¶ 34; Pl.'s Dep. at pp. 115-116.  Plaintiff indicated in his deposition that he was subjected to a temporary loss

of certain property, including his television, radio, and food purchased from the commissary, as well as the loss of privilege of participating in a work program. Pl.'s Dep. at 113-116. Similar restrictions have been found by other courts in this District not to rise to the level of a constitutional violation. *See McChesney v. Hogan*, 2010 WL 3602660, at *14 (N.D.N.Y. Aug. 17, 2010) (citing cases), *report and recommendation adopted*, 2010 WL 3584360 (N.D.N.Y. Sept. 7, 2010). Plaintiff was not subjected to any bodily restraints during his time on MOD status. Pl.'s Dep. at p. 116. The record therefore demonstrates that the actual restrictions imposed on Plaintiff as a result of the placement on MOD status did not implicate any of his constitutionally protected liberty interests.

While the Court finds that Plaintiff was not entitled to due process protections on this record, it also notes that Plaintiff was in fact afforded an opportunity to appeal the decision. Defendant Saxton and other members of Plaintiff's treatment team met with Plaintiff on March 26, 2020 to discuss the events that took place on March 23. Saxton Decl. at ¶¶ 31 & 38, Exs. B & C. Plaintiff was informed that he was being placed on MOD status for twenty-eight days as a result of his threatening and aggressive conduct on March 23. *Id.* Several days later, Plaintiff submitted a Resident Concern Form to Risk Management in an effort to appeal his placement on MOD status. Leris Decl. at ¶ 14, Ex. B, p. 2. Alyssa Moskal, the Director of Inpatient Risk Management for the Sex Offender Treatment Program, responded to Plaintiff's appeal by stating that he was "observed to be noncompliant and aggressive with staff on this date. There is no indication that MOD status is inappropriate or unwarranted." Leris Decl., Ex. B. The Court therefore recommends that summary judgment be granted as to this claim as well.

## B. First Amendment Claims

### 1. *Access to Courts Claim against Defendants Collins and Wilkinson*

Plaintiff asserts that his First Amendment rights were violated when Defendants Collins and Wilkinson searched his room and destroyed his legal work in the process. Am. Compl. at ¶¶ 33-34.  Defendants move for summary judgment because they allege (1) that Defendant Collins was not personally involved in the search of Plaintiff's room; (2) that Defendant Wilkinson did not find any legal papers during the room search; and (3) that in any event, Plaintiff is unable to demonstrate any actual injury as is required to prevail on this claim.  Defs.' Mem. of Law at pp. 18-20.

Civilly committed patients, "like convicted inmates, enjoy a First Amendment right of meaningful access to the courts." *McChesney v. Hogan*, 2010 WL 3602660, at *12.  "[T]o state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury." *Brooks v. Hogan*, 2020 WL 5034226, at *25 (N.D.N.Y. Apr. 27, 2020) (quoting *Vega v. Artus*, 610 F. Supp. 2d 185, 201 (N.D.N.Y. 2009)).  A showing of actual injury is required "[b]ecause law libraries and legal assistance programs do not represent constitutional rights in and of themselves, but only the means to ensure a reasonably adequate opportunity [to access the courts]." *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).  "A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Brooks v. Hogan*, 2020 WL 5034226 at *25 (quoting *Amaker v. Haponik*, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999)).  A

showing of "actual injury" requires Plaintiff to demonstrate that he suffered harm due to a "lost, rejected, or impeded" nonfrivolous legal claim. *Lewis v. Casey*, 518 U.S. at 353 n.4.

The legal work that Plaintiff alleges was destroyed was related to his Article 10 appeal. Defs.' Rule 56.1 St. at ¶ 75; Pl.'s Dep. at pp. 104-105. During his deposition, Plaintiff asserted that he experienced a delay in pursuing his appeal because he had to work with his attorney to get copies of the paperwork that was destroyed. Pl.'s Dep. at p. 106. "Mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Anthony v. Green*, 2022 WL 4939991, at *5 (N.D.N.Y. Oct. 4, 2022) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (internal quotation marks omitted)). Moreover, Plaintiff goes on to state that he was represented by counsel in pursuing that appeal, and that his attorney was the party responsible for filing all of the appellate paperwork. Pl.'s Dep. at p. 108. The appeal was ultimately successful. Pl.'s Dep. at p. 104. While Plaintiff and Defendants' version of the facts may diverge on the issue of whether any legal work was found or destroyed during the search of Plaintiff's room, this question alone is insufficient to create a material issue of fact for trial. The record conclusively establishes that Plaintiff did not suffer an actual injury and so the Court recommends that this claim be dismissed.

### 2. *Magazine Restriction Claim against Defendant Saxton*

Plaintiff alleges that his First Amendment rights were violated by Defendant Saxton when she placed him on an indefinite period of magazine restriction. Am. Compl. at ¶¶ 45-53. Defendant Saxton asserts that she is entitled to summary judgment on this

claim for two reasons. First, she asserts that Plaintiff has no constitutional right to non-religious and non-legal reading materials. Defs.' Mem. of Law at p. 22. Second, she asserts that Plaintiff's claim fails because even if he could assert a First Amendment right to access those materials, he cannot satisfy the factors enumerated in *Turner v. Safley*. Defs.' Mem. of Law at pp. 22-24 (citing *Turner v. Safley*, 482 U.S. 78 (1987)).

Defendant Saxton's first asserted basis for summary judgment, which relies on the proposition that a civilly confined resident has no constitutional right to non-religious and non-legal reading materials, appears to have been rejected by Chief Judge Sannes on an earlier motion to dismiss. *See Myers v. Saxton*, 2021 WL 149062, at *5. Chief Judge Sannes explained that "[t]here can be little doubt that civilly committed persons … retain certain First Amendment rights, especially given the Supreme Court's declaration that involuntarily committed persons 'are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'" *Id.* (quoting *Yeldon v. Hogan*, 2010 WL 983819, at *7 (N.D.N.Y. Mar. 15, 2010, *aff'd*, 400 F. App'x 580 (2d Cir. 2010)). However, at the motion to dismiss stage, without the benefit of a fully developed record, the Court was unable to determine "whether terminating [P]laintiff's access to magazines [was] legitimately related to a governmental interest if he did not alter the magazines found in his room." *Id.*

In order to determine whether a constitutional right to receive information has been violated, "a court considers (1) whether prohibiting a person from exercising a constitutional right is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising that right; (3) what effect accommodation of the

interest would have on facility staff, other residents, and the allocation of facility resources; and (4) whether there are ready alternatives available that continue to serve the facility's interest without impinging constitutional rights." *Myers v. Saxton*, 2021 WL 149062, at *5 (citing *Turner v. Safley*, 482 U.S. at 89-90).

On March 26, 2020, Defendant Saxton informed Plaintiff that his Individual Service Plan Method ("ISP") was being updated to restrict his access to magazines. Saxton Decl. at ¶ 40; Ex. C. While Plaintiff initially denied that he had altered any magazines, the record establishes that this prohibition was put in place following the search of Plaintiff's room, during which Plaintiff was found to be in possession of "altered magazines" stored in clear plastic page protectors. Saxton Decl., Ex. C. These altered magazines "contained ripped and cut out pictures of pre-pubescent female and male children glued and taped to pages of the magazines. In addition, the faces of many of the adults on the magazine pages were covered by paper or blacked out with dark-colored marker." Saxton Decl. Ex. C. Defendant Saxton has provided the Court with copies of these altered images for an *in camera* review, which are consistent with her descriptions.

Plaintiff's treatment team found the discovery of the images particularly concerning because of the nature of Plaintiff's underlying offenses. Saxton Decl. at ¶ 38, Ex. C. The images also violated the policy contained in the CNYPC Resident Handbook. Saxton Decl. at ¶ 39; Ex. D at p. 37. Plaintiff is currently confined at CNYPC pursuant to Article 10 of the New York Mental Hygiene Law as a sex offender. Defs.' Rule 56.1 St. at ¶¶ 1-4. Plaintiff was convicted of sexual abuse in the first degree and the attempted use of a child in a sexual performance. *Id.* at ¶ 3. He served twenty years in prison and

was civilly committed to CNYPC following his release.  *Id.* at ¶¶ 3-4.  Defendant Saxton

and other members of Plaintiff's treatment team attempted to meet with him to discuss

the images.  Defs.' Rule 56.1 St. at ¶ 96.  In response, Plaintiff stated "I plead the fifth"

and refused any further discussion.  Saxton Decl. at ¶ 43, Ex. C.  The restriction was

eventually lifted after Plaintiff began discussing the photographs with his treatment team.

Saxton Decl.  at ¶ 45, Pl.'s Dep. at pp. 126, 131.  Plaintiff continued to be able to receive

religious magazines and newspapers while on the magazine restriction.  Pl.'s Dep. at pp.

132-33.

    In  this  case,  CNYPC  as  a  government  entity  was  responsible  for  providing

treatment to Plaintiff as a civilly confined individual.  Plaintiff's treatment team, in the

exercise  of  their  professional  judgment,  determined  the  magazine  restriction  to  be

necessary for treatment purposes.  This restriction, which was instituted because Plaintiff

altered magazines "to reflect his sexual deviance," Saxton Decl. at Ex. C, was rationally

related to the stated treatment goals of the SOTP program, which is designed to reduce

the risk of sexual recidivism.  *See* Saxton Decl., Ex. D at p. 22.  The temporary prohibition

on receiving and possessing magazines was no more restrictive than necessary because

Plaintiff  continued  to  have  access  to  both  legal  and  religious  reading  materials.   The

restriction was eventually lifted after Plaintiff began to discuss the photographs with his

treatment team.  Defs.'s Rule 56.1 St. at ¶ 98.  Other courts in this District have upheld

similar restrictions at CNYPC involving photographs of minor children.  *See Yeldon v.

Hogan*, 2010 WL 983819, at *8-9.

On this record, no reasonable factfinder could conclude that the magazine restriction imposed by Defendant Saxton and Plaintiff's treatment team resulted in a violation of his First Amendment right to access information.

Moreover, to the extent that "neither the Supreme Court nor the Second Circuit has yet articulated the appropriate standard to be applied when a person who is civilly committed challenges an action or policy on First Amendment grounds," *Myers v. Saxton*, 2021 WL 149062, at *5, qualified immunity is plainly appropriate on this claim.

Accordingly, the Court recommends that summary judgment be granted as to this claim.

## IV. CONCLUSION

For the reasons stated above, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 89) be **DENIED as to Plaintiff's excessive force claim concerning events in the "side room"** and **GRANTED as to his remaining claims**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*,

892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   February 21, 2023
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge