**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MICHAEL MYERS,

                                    Plaintiff,                         9:20-cv-00465 (BKS/DJS)

v.


ERICA SAXTON, et al.,

                                    Defendants.

---

**Appearances:**

*Plaintiff, pro se:*
Michael Myers
13462261604
CNYPC
P.O. Box 300
Marcy, NY 13403

*For Defendants:*
Letitia James
Attorney General of the State of New York
Konstandinos Leris
Assistant Attorney General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Plaintiff Michael Myers is involuntarily civilly confined at the Central New York

Psychiatric Center ("CNYPC") pursuant to Article 10 of the New York State Mental Hygiene

Law. (*See generally* Dkt. No. 10). On August 20, 2020, Plaintiff commenced this civil rights

action under 42 U.S.C. § 1983 asserting claims arising out of his confinement. (Dkt. Nos. 1, 10).

On April 29, 2022, Defendants Saxton, Collins, and Wilkinson filed a motion for summary judgment under Federal Rule of Civil Procedure 56. (Dkt. No. 89). Plaintiff filed a response in opposition, (Dkt. No. 94), Defendants filed a reply, (Dkt. No. 95), and Plaintiff filed a sur-reply, (Dkt. No. 96). This matter was referred to United States Magistrate Judge Daniel J. Stewart who, on February 21, 2023, issued a Report-Recommendation recommending that: (1)  summary judgment be granted with respect to so much of Plaintiff's Fourteenth Amendment excessive force claim as alleged that he was bounced off the elevator doors but denied as to the use of force in the side room,[1] (Dkt. No. 97, at 7–12); (2) that summary judgment be granted as to Plaintiff's Fourteenth Amendment medical indifference claim against Defendant Collins, (*id.* at 12–15); (3) that summary judgment be granted as to Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Saxton, (*id.* at 15–17); (4) that summary judgment be granted as to Plaintiff's First Amendment access to courts claim against Defendants Collins and Wilkinson, (*id.* at 18–19); and (5) that summary judgment be granted as to Plaintiff's First Amendment magazine restriction claim against Defendant Saxton, (*id.* at 19–23).

Plaintiff and Defendants have filed timely objections to the Report-Recommendation. (Dkt. Nos. 98, 100). Plaintiff has responded to Defendants' objections. (Dkt. No. 101). For the reasons below, the Report-Recommendation is adopted.

## II.    STANDARD

This Court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [report-recommendation] that the

---

[1] This room is also called the seclusion room.

objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (internal quotation marks omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). "[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal . . . ." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920 at *2, 2011 U.S. Dist. LEXIS 95351, at *4 (S.D.N.Y. Aug. 25, 2011) (citation omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

## III.     DISCUSSION

### A.     First Amendment Access to Courts Claim against Defendants Collins and Wilkinson

Plaintiff objects to the recommended dismissal of his First Amendment claims against Collins and Wilkinson in connection with the search of his room. (Dkt. No. 98, at 1). Specifically, Plaintiff asserts that Collins and Wilkinson "never once cited security reasons why they did search my room" and that he has the "right to be protected against any unreasonable warranted searches as being a civilian in a treatment facility." (*Id.*). However, Plaintiff's illegal room search claim was dismissed early in this action. (Dkt. No. 21, at 6–7 (Decision and Order dated Aug. 27, 2020, dismissing illegal room search claims against, inter alia, Defendants Collins and Wilkinson); *see also* Dkt. No. 3, at 7–8 (Decision and Order dated June 1, 2020 dismissing room search claim)). Plaintiff advances no other objection in connection with his First Amendment access to courts claim against Defendants Collins and Wilkinson.

Magistrate Judge Stewart found that "[w]hile Plaintiff and Defendants' version of the facts may diverge on the issue of whether any legal work was found or destroyed during the

search of Plaintiff's room, this question alone is insufficient to create a material issue of fact for trial"; where, as here, Plaintiff failed to present any evidence that the destroyed legal work, which was related to an Article 10 appeal, caused "actual injury," Defendants were entitled to summary judgment. (Dkt. No. 97, at 18–19). Indeed, as Magistrate Judge Stewart noted, Plaintiff ultimately succeeded on the appeal. (*Id.* at 19); *see Oliva v. Town of Greece*, 630 F. App'x 43, 45 (2d Cir. 2015) ("To succeed on an access to courts claim, a plaintiff must show that the defendant caused the plaintiff injury or, put less succinctly, that the defendant took or was responsible for actions that had the actual effect of frustrating the plaintiff's effort to pursue a legal claim."). Accordingly, having reviewed for clear error and having found none, the Court adopts Magistrate Judge Stewart's recommendation that summary judgment be granted dismissing Plaintiff First Amendment access to courts claim against Defendants Collins and Wilkinson.

     **B.**    **First Amendment Access to Information Claim against Defendant Saxton**

Plaintiff objects to dismissal of his claim that Defendant Saxton violated his First Amendment right to access information by placing him on an indefinite period of magazine restriction. (Dkt. No. 10, ¶¶ 45–53). The record indicates that Plaintiff's Individual Service Plan Method was changed to restrict his access to magazines after "altered magazines" containing "ripped and cut out pictures of pre-pubescent female and male children glued and taped to pages of the magazines" were found during a search of Plaintiff's room. (Dkt. No. 97, at 21). Magistrate Judge Stewart recommended that summary judgment be granted dismissing Plaintiff's claim:

> In this case, CNYPC as a government entity was responsible for providing treatment to Plaintiff as a civilly confined individual. Plaintiff's treatment team, in the exercise of their professional judgment, determined the magazine restriction to be necessary for treatment purposes. This restriction, which was instituted because

> Plaintiff altered magazines "to reflect his sexual deviance," Saxton
> Decl. at Ex. C, was rationally related to the stated treatment goals of
> the SOTP program, which is designed to reduce the risk of sexual
> recidivism. *See* Saxton Decl., Ex. D at p. 22. The temporary
> prohibition on receiving and possessing magazines was no more
> restrictive than necessary because Plaintiff continued to have access
> to both legal and religious reading materials. The restriction was
> eventually lifted after Plaintiff began to discuss the photographs
> with his treatment team. Defs.'s Rule 56.1 St. at ¶ 98. Other courts
> in this District have upheld similar restrictions at CNYPC involving
> photographs of minor children.
>
> On this record, no reasonable factfinder could conclude that the
> magazine restriction imposed by Defendant Saxton and Plaintiff's
> treatment team resulted in a violation of his First Amendment right
> to access information.

(*Id.* at 20–21). Plaintiff objects to Magistrate Judge Stewart's recommendation on the basis that

both during discovery and in responding to Defendants' motion for summary judgment, he has

been denied access to the allegedly "altered magazine[]" pages. (Dkt. No. 98, at 1). Plaintiff

asserts he "was not permitted to do Counsel Discovery because defendants had access to these

magazines and I was not permitted to view the pictures and magazines which the Judge base his

decision making his recommendations to these magazines which was unfair because Plaintiff

could not defend his self properly at all." (Dkt. No. 98, at 1).

At the discovery stage, Plaintiff moved to compel Defendants to produce the magazine

clippings. (Dkt. No. 58). Defendants opposed the motion on the ground "that these photographs

could not be disclosed for safety and security concerns." (Dkt. No. 60, at 2). Defendants also

filed a declaration by Aaron Shupp, Psy.D., the Chief Psychologist for the Sex Offender

Treatment Program at CNYPC, who stated that "there are no circumstances by which Plaintiff

should be able to possess, or even view the photographs at issue" because it "would negatively

impact the treatment Plaintiff is receiving for his pedophilic disorder and the treatment of other

CNYPC residents who may be exposed to this material." (Dkt. No. 61, ¶ 6). Magistrate Judge

Stewart issued a Decision and Order denying Plaintiff's motion to compel:

> Upon review of the photographs, the Court agrees that disclosure to
> Plaintiff at this time would be inappropriate. The materials were
> confiscated by authorities at CNYPC for security reasons and so to
> return them to Plaintiff would be counterproductive to reasonable
> security concerns at the facility. Moreover, Plaintiff was in
> possession of these documents and so is aware of their content
> which minimizes any need for him to obtain copies at this stage of
> the proceeding.

(Dkt. No. 66, at 3). Having reviewed the photographs, the Court agrees. Moreover, Plaintiff does

not argue that there is any reason to believe that the magazine clippings are not the clippings

found in his room or that viewing them would alter the outcome in this case in any manner. *See*

*Martinez v. True*, 128 F. App'x 714, 716 (10th Cir. 2005) (finding no "fundamental unfairness"

to the plaintiff in not appointing counsel to review confidential prison materials, explaining

"[w]e have inspected the confidential prison materials the district court reviewed in camera [on

summary judgment], and find no information in them to support [the plaintiff's] claims, [and

that] the summary judgment order fairly describes the information contained in the confidential

materials").

As Plaintiff does not otherwise object to Magistrate Judge Stewart's ruling with respect

to his First Amendment right of access to information claim, the Court has reviewed it for clear

error and found none. Further, as the Court previously observed, "neither the Supreme Court nor

the Second Circuit has yet articulated the 'appropriate standard to be applied when a person who

is civilly committed challenges an action or policy on First Amendment grounds.'" *Myers v.*

*Saxton*, No. 20-cv-0465, 2021 WL 149062, at *5, 2021 U.S. Dist. LEXIS 8128, at *14

(N.D.N.Y. Jan. 15, 2021) (citing *Yeldon v. Hogan*, No. 9:08-cv-769, 2010 WL 983819, at *7,

2010 U.S. Dist. LEXIS 23821, at *20 (N.D.N.Y. Mar. 15, 2010), *report-recommendation*

*adopted*, 2010 WL 983819, 2010 U.S. Dist. LEXIS 23825 (N.D.N.Y. Marc. 15, 2010), *aff'd*, 400 F. App'x 580 (2d Cir. 2010). The Court therefore agrees with Magistrate Judge Stewart that "qualified immunity is plainly appropriate on this claim." (Dkt. No. 97, at 23); *cf.*, *Ahlers v. Rabinowitz*, 684 F.3d 53, 66 (2d Cir. 2012) (applying qualified immunity after undertaking, "for the first time . . . a balancing analysis with regard to the right of a civilly committed person to be free from unreasonable seizures," explaining that "'it was objectively reasonable for [the Defendants] to believe their acts did not violate' Ahlers's Fourth Amendment rights, or his First Amendment or procedural due process rights." (quoting *Weyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996)).[2]

Accordingly, Defendant Saxton is entitled to summary judgment dismissing Plaintiff's First Amendment right of access to information claim.

### C.   Fourteenth Amendment Excessive Force

Defendants object to Magistrate Judge Stewart's recommendation that that their motion for summary judgment be denied as to "Plaintiff's Fourteenth Amendment excessive force claim for the incident occurring in the side room at CNYPC." (Dkt. No. 100, at 2). Specifically, Defendants argue that Magistrate Judge Stewart "did not consider Defendants' argument that the force was used [sic] *de minimis* and did not rise to the level of a constitutional violation." (*Id.* at 2 (citing Dkt. No. 89-7, at 15–16 (Defs. Mem. Of Law)).

"[C]laims for excessive force under the Fourteenth Amendment must involve force that is either 'more than *de minimis*' or 'repugnant to the conscience of mankind.'" *Lewis v. Huebner*, No. 17-cv-8101, 2020 WL 1244254, at *5, 2020 U.S. Dist. LEXIS 47200, at 13 (S.D.N.Y. Mar.

---

[2] The magazine clippings have been reviewed in camera and have not been filed on the docket in this case. Defendants are directed to maintain a copy of the magazine clippings in the event they are required in connection with any appeal filed in this matter.

16, 2020) (citing *United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999)). Even if Magistrate

Judge Stewart did not explicitly address whether the force at issue was "*de minimis*," his

discussion of the factual issues surrounding the force used reflects his implicit determination that

those factual issues precluded a conclusion that the force at issue was *de minimis*. Moreover,

having reviewed this issue de novo, the Court agrees that there are questions of fact regarding

Plaintiff's conduct immediately preceding Defendants' use of force and the actions Defendants

took to bring Plaintiff to the ground. Thus, a determination that the force used was *de minimis*

would be inappropriate at the summary judgment stage.

The video shows Plaintiff being escorted through the doorway of the seclusion room by

Defendants Collins and Wilkinson, who both have their hands on Plaintiff's upper body. (DVD #

2020-042 (CS-410 Ward 404 Seclusion Room at 20:35-21:45); *see also* 89-2, ¶ 23; 89-3, ¶ 22).

Collins and Wilkinson release Plaintiff and push Plaintiff into the room. (DVD # 2020-042 (CS-

410 Ward 404 Seclusion Room at 20:35-21:45)). Plaintiff takes several steps forward, turns

around, and backs up as five individuals, including Collins and Wilkinson, move toward him.

(*Id.*). Plaintiff is outside the frame of the video. (*Id.*). Collins, Wilkinson, and a third man remove

headphones and a small device with wires from Plaintiff, who is still outside the frame of the

video. (*Id.*). Plaintiff is told several times to give them his watch and Plaintiff repeatedly says no.

(*Id.*); *see* Dkt. No. 89-2,  ¶ 25 (Wilkinson explaining that watches and headphones "are not

permitted while residents are in the seclusion room"). Defendants, and two others, then move

toward Plaintiff, and out of the frame of the video. (DVD # 2020-042 (CS-410 Ward 404

Seclusion Room at 20:35-21:45)). Defendants state in their declarations that when they tried to

retrieve Plaintiff's watch, he flailed his arm away and "threw a closed fist punch at" at Defendant

Collins. (Dkt. No. 89-2, ¶ 28). Defendants bring Plaintiff to the ground. (Dkt. No. 89-1, at 77

(Plaintiff testifying that "everybody grabb[ed] me" and "[l]aid [me] out"). However, both Plaintiff's conduct preceding the use of force and Defendants' initiation of the force that led to Plaintiff being brought to the ground are outside the frame of the video. Further, viewing the facts in the light most favorable to Plaintiff, the force at issue in this case—Collins and Wilkinson, and two other men bringing Plaintiff to the ground after he refused to turn over his watch—the Court cannot say as a matter of law that the use of force was *de minimis*. *Cf. Virella v. Pozzi*, No. 05-cv-10460, 2006 WL 2707394, at *3, 2006 U.S. Dist. LEXIS 67359, at *9 (S.D.N.Y. Sept. 20, 2006) (granting summary judgment where the "alleged assault" by the defendant, who allegedly swung his keys at the plaintiff "making 'a little contact' with [the plaintiff's] head, and causing a bump "represents only a *de minimis* use of force that does not give rise to a constitutional claim"); *Mascuzzio v. City of New York*, No. 13-cv-4772, 2015 WL 13856994, at *3, 2015 U.S. Dist. LEXIS 196416, at *8 (E.D.N.Y. June 18, 2015) (granting summary judgment where "'no reasonable jury could believe' it was punishment for [the defendant] to grab plaintiff's forearm in order to remove his watch for safekeeping, especially after he vociferously refused to hand it over," explaining that even though the officer "had a limited, even questionable need to obtain the gold watch, the amount of force she used was *de minimis*"). Thus, the Court agrees with Magistrate Judge Stewart that there are factual questions as to the use force in this case, and that such questions preclude a finding that the force used was *de minimis*. Accordingly, Defendants' motion for summary judgment as to the seclusion room excessive force claim is denied.

## IV.   CONCLUSION

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 97) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 89) based upon Fed. R. Civ. P. 56 is **GRANTED IN PART AND DENIED IN PART**, and it is further

**ORDERED** that Defendants' motion for summary judgment is denied as to Plaintiff's Fourteenth Amendment side room, excessive force claim; and it is further

**ORDERED** that Defendants' motion for summary judgment is otherwise granted and Plaintiff's Fourteenth Amendment excessive force/elevator claim, Fourteenth Amendment medical indifference claim against Defendant Collins, Fourteenth Amendment procedural due process claim, First Amendment access to courts claim against Defendants Collins and Wilkinson, and First Amendment denial of access to information claim against Defendant Saxton are **DISMISSED with prejudice;** and it is further

**ORDERED** that the Clerk is directed to terminate Erica Saxton as a defendant in this case; and it is further

**ORDERED** that Plaintiff's motion to appoint counsel for trial (Dkt. No. 99) is **GRANTED**; and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>March 20, 2023</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

10